UNITED STATES of AMERICA
U.S. DISTRICT COURT -- EASTERN DISTRICT OF MICHIGAN

AUDREY SCOTT,

    Plaintiff,                          DEMAND FOR JURY TRIAL


 -vs-                             Case No. 15-13379
                                  Hon. Matthew F. Leitman

KAFTAN ENTERPRISES, INC.,
ALL-STATE CREDIT BUREAU, INCORPORATED,
WEATHERSTONE TOWNHOUSES LIMITED PARTNERSHIP,
MICHIGAN FIRST MORTGAGE, INC., and
MICHAEL G. FEY,

    Defendants.

## FIRST AMENDED COMPLAINT & JURY DEMAND

### Introduction

1.    The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements, in connection with the collection of a debt; it also requires debt collectors to give debtors certain information. 15 U.S.C. §§1692d, 1692e, 1692f and 1692g.

2.    Plaintiff also alleges violations of the Equal Credit Opportunity Act, 15 U.S.C. §1691 *et seq.* ("ECOA") against MICHIGAN FIRST MORTGAGE, INC.; the ECOA requires that notice of adverse action on a request for credit be accurate and timely provided to the applicant.

### Jurisdiction

3.    This court has federal question jurisdiction under the Fair Debt Collection Practices Act, 15 U.S.C. §1692k(d) and 28 U.S.C. §§1331, 1337.

4.      This Court has jurisdiction under 15 U.S.C. §1691e and 28 U.S.C. §§1331, 1332(d), and 1337.

5.      This court has supplemental jurisdiction over the related state law claims arising out of the same nucleus of operative facts which give rise to the Federal law claims.

## Parties

6.      The Plaintiff to this lawsuit resides in Southfield, Michigan in Oakland County.

7.      Kaftan Enterprises, Inc., ("KEI") is a corporation doing business in Oakland County, Michigan.

8.      All-State Credit Bureau, Incorporated ("ASCBI") is a corporation doing business in Oakland County, Michigan.

9.      Weatherstone Townhouses Limited Partnership ("WTLP") is a partnership doing business in Oakland County, Michigan.

10.     Michigan First Mortgage, Inc. ("MFMI") is a corporation doing business in Oakland County, Michigan.

11.     Michael G. Fey is an individual and at all-times an agent and employee of Kaftan Enterprises, Inc.

## Venue

12.     The transactions and occurrences which give rise to this action occurred in Oakland County.

13.     Venue is proper in the Eastern District of Michigan.

## General Allegations

14.     On or about February 12, 2010, the Plaintiff and WTLP entered into a tenant/landlord relationship and signed a lease for the rental of an apartment.

15.     Plaintiff moved into the WTLP apartment on March 1, 2010 and when she moved in she noticed several instances of damages to the unit, including carpet stains.   Plaintiff documented the carpet stains in an inventory checklist.   In addition, the Plaintiff noted damages to the tile in the master bathroom.

16.     When the Plaintiff moved in to the WTLP apartment, she paid a $699.00 security deposit.

17.     When the Plaintiff moved in to the WTLP apartment, the kitchen came with Formica counter-tops which had been in the unit for several years before the Plaintiff moved in.

18.     Plaintiff lived in the WTLP apartment and paid her monthly rent on time for 5 years and 4 months.

19.     During the 5 years and 4 months that the Plaintiff lived in the WTLP apartment, WTLP did not change, clean, nor upgrade the carpeting.

20.     During the 5 years and 4 months that the Plaintiff lived in the WTLP apartment, WTLP did not change, clean, nor upgrade the Formica counter-tops.

21.     During the 5 years and 4 months that the Plaintiff lived in the WTLP apartment, WTLP did not change, clean, nor upgrade the bathroom tiles.

22.     During the 5 years and 4 months that the Plaintiff lived in the WTLP apartment, WTLP did not change, clean, nor upgrade the sink or shower enclosure in the bathroom.

23.     During the 5 years and 4 months that the Plaintiff lived in the WTLP apartment, WTLP made no improvements to the Plaintiff's apartment.

24.     Prior to moving out of the WTLP apartment, WTLP upgraded its "model" apartment with improvements, including, but not limited to marble counter-tops in the kitchen.

25.    Plaintiff moved out of the WTLP apartment on July 22, 2015 as she had been pre-approved for a mortgage by MFMI on a home for herself and her son to purchase and move into.

26.    When the Plaintiff moved out of the WTLP apartment, she left the apartment with no damages, other than normal wear and tear.

27.    During her stay at WTLP, Plaintiff was never more than 2 days late with her rent payment, and that only occurred one time.

28.    When the Plaintiff moved out of the apartment, she requested her security deposit back, turned in her keys, and left WTLP with her forwarding address.

29.    WTLP failed and refused to return the Plaintiff's security deposit.

30.    After the Plaintiff moved out, WTLP engaged KEI to collect an alleged and disputed debt for WTLP.

31.    In response to Plaintiff's request that WTLP return her security deposit, on or about August 3, 2015 ("August 3, 2015 KEI collection letter"), KEI, using the name "Kaftan Communities" sent Plaintiff a list of damages allegedly done to the WTLP apartment; the list of damages included a water bill that the Plaintiff had already paid, the cost of replacing the carpeting for the entire unit, the cost of installing marble counter-tops, and a $100.00 cleaning fee ("alleged damages"); the August 3, 2015 KEI collection letter was an attempt to collect a debt and it was false, misleading, and did not contain notices required under the FDCPA §1692e(11).

32.    KEI did not, within 5 days of the August 3, 2015 KEI collection letter, which was an initial communication under the FDCPA, provide the Plaintiff with any notice required under the FDCPA §1692g.

33.     Plaintiff responded in writing to the list of alleged damages and the entire August 3, 2015 KEI collection letter within seven days of that letter on or about August 6, 2015; on or about August 11, 2015, KEI acknowledged receipt of the Plaintiff's August 6, 2015 written dispute and disagreement.

34.     On or about August 11, 2015, KEI in an attempt to collect a debt on behalf of WTLP, sent a letter to the Plaintiff demanding payment; this letter violated the FDCPA as it was false and misleading, it sought amounts not due or owing, it was sent after the Plaintiff had effectively notified KEI that she did not owe the alleged debt, and without any notice mandated by the FDCPA §1692e(11); Plaintiff received this letter on August 15, 2015.

35.     On or about August 15, 2015, Plaintiff responded to the August 15, 2015 collection letter from KEI in writing and disputed the damages that KEI was claiming on behalf of WTLP.

36.     Under Michigan law and given the facts and circumstances set forth thus far herein, in order for WTLP to retain the Plaintiff's security deposit, WTLP was required to bring an action against the Plaintiff within 45 days of July 22, 2015.

37.     WTLP did not bring an action against the Plaintiff within 45 days of the Plaintiff moving out of the WTLP apartment.

38.     As of September 7, 2015, WTLP's failure to bring a lawsuit under MCL § 554.613 constituted, as a matter of law, a waiver of all claimed damages and made WTLP liable to the Plaintiff for double the amount of the security deposit retained, or $1,398.00.

39.     On or about September 11, 2015, MFMI sent WTLP a "Request for Verification of Rent or

Mortgage."

40.    On or about September 11, 2015, WTLP through KEI and Michael G. Fey, responded to MFMI's "Request for Verification of Rent or Mortgage" by stating that the Plaintiff's rent was in arrears four payments; this statement was false and defamatory; KEI and Michael G. Fey knew that this false statement was false and defamatory when made and knew that the Plaintiff would be harmed by the this false statement; the false statement caused MFMI to deny the Plaintiff's mortgage and lose the opportunity to find housing for herself and her son.

41.    On or about September 11, 2015, WTLP, through KEI and Michael G. Fey, responded to MFMI's "Request for Verification of Rent or Mortgage" by stating that the Plaintiff owed WTLP $1,515.54; this statement was false and defamatory; KEI and Michael G. Fey knew that this false statement was false and defamatory when made and knew that the Plaintiff would be harmed by the this false statement; the false statement caused MFMI to deny the Plaintiff's mortgage and lose the opportunity to find housing for herself and her son.

42.    On or about September 11, 2015, MFMI explained to Plaintiff that these false and defamatory statements made by WTLP concerning late rent payments would result in her loan being denied.

43.    Plaintiff was shocked and despondent; she asked the agent from MFMI to seek a correction from WTLP, KEI, and Michael G. Fey.

44.    On September 14, 2015, MFMI sent WTLP another "Request for Verification of Rent or Mortgage."

45.     On September 14, 2015, WTLP had already, as a matter of law, waived any right to claim damages against the Plaintiff and any right to retain the Plaintiff's security deposit.

46.     On or about September 14, 2015, WTLP responded through KEI and Michael G. Fey to MFMI's second "Request for Verification of Rent or Mortgage" by stating that the Plaintiff owed WTLP $1,515.54; this statement was false and defamatory; KEI and Michael G. Fey knew that this false statement was false and defamatory when made and knew that the Plaintiff would be harmed by the this false statement; the false statement caused MFMI to deny the Plaintiff's mortgage and lose the opportunity to find housing for herself and her son.

47.     On or about September 14, 2015, MFMI spoke directly with Michael G. Fey by telephone; in this phone conversation between MFMI and Michael G. Fey, Michael G. Fey made false and defamatory statements to MFMI, knowing these statements to be false and knowing these statements would harm, if not destroy, Plaintiff's opportunity to obtain the credit approval to which she would otherwise have obtained from MFMI.

48.     Prior to September 2, 2015, KEI assigned the alleged debt to ASCBI for collection purposes.

49.     KEI failed to communicate to ASCBI that the alleged debt was disputed by the Plaintiff, in violation of the FDCPA.

50.     In the alternative, KEI did communicate that the alleged debt was disputed by the Plaintiff, and ASCBI attempted to collect the alleged debt in violation of the FDCPA.

51.     On or about September 2, 2015, ASCBI contacted the Plaintiff for the first time with a written initial communication ("initial communication").

52.     The initial communication did not contain the real name of the entity to which the alleged

debt was allegedly owed, but rather, "Weatherstone North Apartments" which is neither a corporation registered with the State of Michigan, nor an assumed name for any person or entity in Oakland County, Michigan.

53.  The fact that ASCBI listed a non-existent entity as the creditor to whom Plaintiff allegedly owed a debt is a false and misleading statement and would be confusing and vexatious to the least sophisticated debtor, especially in a case where, as in this case, the least sophisticated debtor had claims or potential claims against a lessor.

54.  ASCBI, prior to sending the initial communication to Plaintiff, could have and was required to, make sure that the entity for whom it was collecting was an actual real person or existing entity.

55.  ASCBI collecting in the name of a non-existent entity provides false notice of who or what exactly is the landlord/lessor against whom claims should be brought.

56.  Prior to the filing of this complaint, the Plaintiff brought a small claims law suit against a named a party which was different than the non-entity listed as the creditor in the ASCBI letter; when she received the initial communication from ASCBI, Plaintiff was confused as to who she should have sued to get her security deposit back and ended up dismissing the small claims lawsuit without prejudice and a loss of her filing fee.

57.  In March of 2015 Plaintiff applied for a loan ("loan") with MFMI.

58.  From March through September, MFMI verbally told the Plaintiff that she was approved for a loan; Plaintiff refrained from goin g to another mortgage company for a loan.

59.  At no time did MFMI indicate that the Plaintiff's loan application was incomplete in a manner mandated under the ECOA.

60.   Plaintiff did not receive timely written notice from MFMI that this application had been approved or denied.

61.   Plaintiff did not receive timely written notice containing the reasons for approval, denial or delay from MFMI.

62.   When Plaintiff received untimely notice from MFMI that the loan had been denied, the notice was inaccurate; specifically, the adverse action notice stated that Plaintiff's obligations were excessive based on her income.  Upon information and belief, this was untrue.

63.   When Plaintiff received untimely notice from MFMI that the loan had been denied, the notice was incomplete; specifically, the adverse action notice stated, "Delinquent Past or Present obligations with," but did not specify anything else.

### <u>COUNT  I – Fair Debt Collection Practices Act (KEI)</u>

64.   Ms. Scott incorporates the preceding allegations by reference.

65.   At all relevant times KEI – in the ordinary course of its business – regularly engaged in the practice of collecting debts on behalf of other individuals or entities.

66.   KEI is a "debt collector" under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692a(6).

67.   KEI 's foregoing acts in attempting to collect this alleged debt against Ms.  Scott constitute violations of the FDCPA; specifically, KEI failed to comply with §§ 1692c, 1692e, and 1692g.

68.   Ms.  Scott has suffered damages as a result of these violations of the FDCPA.

ACCORDINGLY, Plaintiff requests that this Court enter judgment for actual economic damages, actual non-economic damages, statutory damages, punitive damages, costs and attorneys fees arising from KEI's violations of the FDCPA.

## COUNT  II – Michigan Occupational Code (KEI)

69.　　Ms.  Scott incorporates the preceding allegations by reference.

70.　　KEI is a "collection agency" as that term is defined in the Michigan Occupational Code, M.C.L. § 339.901(b).

71.　　Ms.  Scott is a debtor as that term is defined in M.C.L. § 339.901(f).

72.　　KEI 's foregoing acts in attempting to collect this alleged debt against Ms. Scott constitute violations of the Occupational Code.

73.　　Ms.  Scott has suffered damages as a result of these violations of the Michigan Occupational Code.

ACCORDINGLY, Plaintiff requests that this Court enter judgment for actual economic damages, actual non-economic damages, statutory damages, punitive damages, costs and attorneys fees arising from KEI's violations of  the Michigan Occupational Code.

## COUNT  III – Intentional Infliction of Emotional Distress (KEI)

74.　　Plaintiff  incorporates the preceding allegations by reference.

75.　　KEI's conduct in defaming the good name, reputation and creditworthiness of Plaintiff constituted extreme and outrageous conduct.

76.　　KEI intentionally defamed the good name and credit of the Plaintiff, and did so with reckless disregard of the possible consequences to Plaintiff.

10

77.     KEI's conduct in defaming the good name and credit of Plaintiff directly and proximately caused emotional distress to the Plaintiff.

78.     Plaintiff has suffered damages as a result of the conduct of KEI.


ACCORDINGLY, Plaintiff requests that this Court enter judgment for actual economic damages, actual non-economic damages, punitive damages, costs and attorneys fees arising from KEI's intentional infliction of emotional distress upon Plaintiff.

### COUNT  IV – Negligence (KEI)

79.     Plaintiff incorporates the preceding allegations by reference.

80.     KEI owed Plaintiff  a duty to refrain from unreasonable conduct which could foreseeably cause damage to Plaintiff's reputation.

81.     Plaintiff  holds a property interest in her good name, credit worthiness, and reputation.

82.     KEI's publication of false and inaccurate information to Plaintiff's lender was unreasonable.

83.     Plaintiff  has suffered foreseeable damages as a result of this unreasonable publication of false and inaccurate credit information by KEI.

ACCORDINGLY, Plaintiff requests that this Court enter judgment for actual economic damages, actual non-economic damages, punitive damages, costs and attorneys fees arising from KEI's negligence.

### COUNT  V – Defamation by Libel (KEI)

84.     Plaintiff  incorporates the preceding allegations by reference.

85.     KEI's written conveyances to MFMI were false and defamatory.

86.     KEI's publications were not privileged communications.

11

87.     KEI's publications were made negligently, with reckless disregard to their falsity, or maliciously.

88.     The statements were *per se* defamatory.

89.     Plaintiff has suffered special damages including loss of creditworthiness and the denial of a mortgage as a result of the publication of the defamatory statements.

90.     Plaintiff has suffered emotional distress as a result of the publication of the defamatory statements.

ACCORDINGLY, Plaintiff requests that this Court enter judgment for actual economic damages, actual non-economic damages, punitive damages, special damages, costs and attorneys fees arising from KEI's defamation by libel.

## COUNT  VI – Malicious Statutory Libel (KEI)

91.     Plaintiff incorporates the preceding allegations by reference.

92.     The inaccurate credit information was published with malice or ill-will.

93.     Plaintiff has suffered damages as a result of this malicious libel by KEI in violation of M.C.L. § 600.2911.

94.     Plaintiff is entitled to actual and punitive damages has suffered damages as a result of this malicious liable under the provisions of M.C.L. § 600.2911.

ACCORDINGLY, Plaintiff requests that this Court enter judgment for actual economic damages, actual non-economic damages, punitive damages, special damages, costs and attorneys fees arising from KEI's malicious statutory libel.

## COUNT  VII – Fair Debt Collection Practices Act (Michael G. Fey)

95.    Ms. Scott incorporates the preceding allegations by reference.

96.    At all relevant times Michael G. Fey – in the ordinary course of its business – regularly engaged in the practice of collecting debts on behalf of other individuals or entities.

97.    Michael G. Fey is a "debt collector" under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692a(6).

98.    Michael G. Fey 's foregoing acts in attempting to collect this alleged debt against Ms. Scott constitute violations of the FDCPA; specifically, Michael G. Fey failed to comply with §§ 1692c, 1692e, and 1692g.

99.    Ms. Scott has suffered damages as a result of these violations of the FDCPA.

ACCORDINGLY, Plaintiff requests that this Court enter judgment for actual economic damages, actual non-economic damages, statutory damages, punitive damages, costs and attorneys fees arising from Michael G. Fey's violations of the FDCPA.

**COUNT VIII – Intentional Infliction of Emotional Distress (Michael G. Fey)**

100.    Plaintiff incorporates the preceding allegations by reference.

101.    Michael G. Fey's conduct in defaming the good name, reputation, and creditworthiness of Plaintiff constituted extreme and outrageous conduct.

102.    Michael G. Fey intentionally defamed the good name and credit of the Plaintiff, and did so with reckless disregard of the possible consequences to Plaintiff.

103.    Michael G. Fey's conduct in defaming the good name and credit of Plaintiff directly and proximately caused emotional distress to the Plaintiff.

104.    Plaintiff has suffered damages as a result of the conduct of Michael G. Fey.

ACCORDINGLY, Plaintiff requests that this Court enter judgment for actual economic

damages, actual non-economic damages, punitive damages, costs and attorneys fees arising Michael G. Fey's intentional infliction of emotional distress upon Plaintiff.

## COUNT  IX – Negligence (Michael G. Fey)

105.    Plaintiff incorporates the preceding allegations by reference.

106.    Michael G. Fey owed Plaintiff  a duty to refrain from unreasonable conduct which could foreseeably cause damage to Plaintiff's reputation.

107.    Plaintiff  holds a property interest in her good name, credit worthiness, and reputation.

108.    Michael G. Fey's publication of false and inaccurate information to Plaintiff's lender was unreasonable.

109.    Plaintiff  has suffered foreseeable damages as a result of this unreasonable publication of false and inaccurate credit information by Michael G. Fey.

ACCORDINGLY, Plaintiff requests that this Court enter judgment for actual economic damages, actual non-economic damages, punitive damages, costs and attorneys fees arising from Michael G. Fey's negligence.

## COUNT  X – Defamation by Libel (Michael G. Fey)

110.    Plaintiff  incorporates the preceding allegations by reference.

111.    Michael G. Fey's written conveyances to MFMI were false and defamatory.

112.    Michael G. Fey's publications were not privileged communications.

113.    Michael G. Fey's publications were made negligently, with reckless disregard to their falsity, or maliciously.

114.    The statements were *per se* defamatory.

115.    Plaintiff  has suffered special damages including loss of creditworthiness and the denial of

a mortgage as a result of the publication of the defamatory statements.

116.    Plaintiff  has suffered emotional distress as a result of the publication of the defamatory

statements.

ACCORDINGLY, Plaintiff requests that this Court enter judgment for actual economic

damages, actual non-economic damages, punitive damages, special damages, costs and attorneys fees

arising from Michael G. Fey's defamation by libel.

### COUNT  XI – Malicious Statutory Libel (Michael G. Fey)

117.    Plaintiff  incorporates the preceding allegations by reference.

118.    The inaccurate credit information was published with malice or ill-will.

119.    Plaintiff  has suffered damages as a result of this malicious libel by Michael G. Fey in

violation of M.C.L. § 600.2911.

120.    Plaintiff  is entitled to actual and punitive damages has suffered damages as a result of this

malicious liable under the provisions of M.C.L. § 600.2911.

ACCORDINGLY, Plaintiff requests that this Court enter judgment for actual economic

damages, actual non-economic damages, punitive damages, special damages, costs and attorneys fees

arising from Michael G. Fey's malicious statutory libel.

### COUNT  XII – Fair Debt Collection Practices Act (ASCBI)

121.    Ms.  Scott incorporates the preceding allegations by reference.

122.    At all relevant times ASCBI – in the ordinary course of its business – regularly engaged in

the practice of collecting debts on behalf of other individuals or entities.

123.    ASCBI is a "debt collector" under the Fair Debt Collection Practices Act ("FDCPA"), 15

U.S.C. §1692a(6).

124.  ASCBI 's foregoing acts in attempting to collect this alleged debt against Ms.  Scott constitute violations of the FDCPA; specifically, ASCBI violated the §1692g by failing to provide the real name of the creditor; ASCBI violated §1692e by sending a false and misleading communication to the Plaintiff in an attempt to collect the debt.

125.  Ms.  Scott has suffered damages as a result of these violations of the FDCPA.

ACCORDINGLY, Plaintiff requests that this Court enter judgment for actual economic damages, actual non-economic damages,  statutory damages, punitive damages, costs and attorneys fees arising from ASCBI's violations of the FDCPA.

## COUNT  XIII – Michigan Occupational Code (ASCBI)

126.  Ms.  Scott incorporates the preceding allegations by reference.

127.  ASCBI is a "collection agency" as that term is defined in the Michigan Occupational Code, M.C.L. § 339.901(b).

128.  Ms.  Scott is a debtor as that term is defined in M.C.L. § 339.901(f).

129.  ASCBI 's foregoing acts in attempting to collect this alleged debt against Ms. Scott constitute violations of the Occupational Code.

130.  Ms.  Scott has suffered damages as a result of these violations of the Michigan Occupational Code.

ACCORDINGLY, Plaintiff requests that this Court enter judgment for actual economic

damages, actual non-economic damages, statutory damages, punitive damages, costs and attorneys fees arising from ASCBI's violations of the Michigan Occupational Code.

## COUNT XIV – Intentional Infliction of Emotional Distress (WTLP)

131. Plaintiff incorporates the preceding allegations by reference.

132. WTLP's conduct in defaming the good name, reputation, and creditworthiness of Plaintiff constituted extreme and outrageous conduct.

133. WTLP intentionally defamed the good name and credit of the Plaintiff, and did so with reckless disregard of the possible consequences to Plaintiff.

134. WTLP's conduct in defaming the good name and credit of Plaintiff directly and proximately caused emotional distress to the Plaintiff.

135. Plaintiff has suffered damages as a result of the conduct of WTLP.

ACCORDINGLY, Plaintiff requests that this Court enter judgment for actual economic damages, actual non-economic damages, punitive damages, costs and attorneys fees arising from WTLP's intentional infliction of emotional distress upon Plaintiff.

## COUNT XV – Negligence (WTLP)

136. Plaintiff incorporates the preceding allegations by reference.

137. WTLP owed Plaintiff a duty to refrain from unreasonable conduct which could foreseeably cause damage to Plaintiff's reputation.

138. Plaintiff holds a property interest in her good name, credit worthiness, and reputation.

17

139.   WTLP's publication of false and inaccurate information to Plaintiff's lender was unreasonable.

140.   Plaintiff has suffered foreseeable damages as a result of this unreasonable publication of false and inaccurate credit information by WTLP.


ACCORDINGLY, Plaintiff requests that this Court enter judgment for actual economic damages, actual non-economic damages, punitive damages, special damages, costs and attorneys fees arising from WTLP's negligence.

## COUNT XVI – Defamation by Libel (WTLP)

141.   Plaintiff incorporates the preceding allegations by reference.

142.   WTLP's written conveyances to MFMI were false and defamatory.

143.   WTLP's publications were not privileged communications.

144.   WTLP's publications were made negligently, with reckless disregard to their falsity, or maliciously.

145.   The statements were *per se* defamatory.

146.   Plaintiff has suffered special damages including loss of creditworthiness and the denial of a mortgage as a result of the publication of the defamatory statements.

147.   Plaintiff has suffered emotional distress as a result of the publication of the defamatory statements.

ACCORDINGLY, Plaintiff requests that this Court enter judgment for actual economic damages, actual non-economic damages, punitive damages, special damages, costs and attorneys fees arising from WTLP's defamation by libel.

## COUNT XVII – Malicious Statutory Libel (WTLP)

148.    Plaintiff  incorporates the preceding allegations by reference.

149.    The inaccurate credit information was published with malice or ill-will.

150.    Plaintiff  has suffered damages as a result of this malicious libel by WTLP in violation of

M.C.L. § 600.2911.

151.    Plaintiff  is entitled to actual and punitive damages has suffered damages as a result of this

malicious liable under the provisions of M.C.L. § 600.2911.

ACCORDINGLY, Plaintiff requests that this Court enter judgment for actual economic

damages, actual non-economic damages, punitive damages, special damages, costs and attorneys fees

arising from WTLP's malicious statutory libel.

## COUNT  XVIII – Violation of the Security Deposit Act (WTLP)

152.    Plaintiff hereby incorporates all the facts and allegations set forth previously as if fully set

forth herein.

153.    WTLP has illegally retained the Plaintiff's security deposit.

154.    WTLP has engaged in conduct intended to defraud Plaintiff of her security deposit.

155.    Plaintiff has suffered damages.

156.    Plaintiff is entitled to double damages.

ACCORDINGLY, Plaintiff requests that this Court enter judgment for actual economic

damages, actual non-economic damages, double damages, costs and attorneys fees arising from

WTLP's violations of the security deposit act.

## COUNT  XIX – Breach of Contract (WTLP)

157.    Plaintiff hereby incorporates all the facts and allegations set forth previously as if fully set

forth herein.

158.    WTLP has breached the contract with the Plaintiff as set forth herein.

159.    Plaintiff has suffered actual, incidental and consequential damages as a result of the WTLP's

breach of contract.

ACCORDINGLY, Plaintiff requests that this Court enter judgment for actual economic

damages, actual non-economic damages, costs and attorneys fees arising from WTLP's breach of

contract.

### COUNT  XX – VIOLATION OF M.C.L § 445.901 *et seq*. (WTLP)

160.    Plaintiff hereby incorporates all the facts and allegations set forth previously as if fully set

forth herein.

161.    The facts set forth in this complaint establish that WTLP has violated one or more of the

provisions of the Michigan Consumer Protection Act, M.C.L.§ 445.903(1).

162.    Plaintiff has suffered damages as a result of these violations of the Michigan Consumer

Protection Act.

ACCORDINGLY, Plaintiff requests that this Court enter judgment for actual economic

damages, actual non-economic damages, costs and attorneys fees arising from WTLP's violations

of M.C.L. §445.901 *et seq*.

### COUNT  XXI  -- Statutory Conversion (WTLP)

163.    Plaintiff hereby incorporates all the facts and allegations set forth previously as if fully set

forth herein.

164.    The acts and omissions described herein constitute a willful or intentional conversion under

MCL § 600.2919a entitling Plaintiff to recover treble the value of the money or property converted.

ACCORDINGLY, Plaintiff requests that this Court enter judgment for actual economic damages, actual non-economic damages, treble damages, costs and attorneys fees arising from WTLP's conversion of the Plaintiff's security deposit.


## COUNT  XXII  -- Common Law Conversion (WTLP)

165.     Plaintiff hereby incorporates all the facts and allegations set forth previously as if fully set forth herein.

166.     The acts and omissions described herein constitute a conversion at common law entitling Plaintiff to recover the value of the money or property converted.

ACCORDINGLY, Plaintiff requests that this Court enter judgment for actual economic damages, actual non-economic damages, costs and attorneys fees arising from WTLP's conversion of the Plaintiff's security deposit.

## COUNT  XXIII – VIOLATIONS OF THE ECOA (MFMI)

167.     Ms.  Scott incorporates the preceding allegations by reference.

168.     Ms. Scott's application for credit was subject to the ECOA and implementing Federal Reserve Board Regulation B.

169.     No credit was extended to Plaintiff.

170.     No timely, written statement of the reasons for not granting the loan was furnished to Plaintiff.

171.     15 U.S.C. §1691(d) provides:

Reason for adverse action; procedure applicable; "adverse action" defined.

(1) Within thirty days (or such longer reasonable time as specified in regulations of the Board for any class of credit transaction) after receipt of a completed application for credit, a creditor shall notify the applicant of its action on the application.

(2) Each applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor. A creditor satisfies this obligation by--

(A) providing statements of reasons in writing as a matter of course to applicants against whom adverse action is taken; or

(B) giving written notification of adverse action which discloses (i) the applicant's right to a statement of reasons within thirty days after receipt by the creditor of a request made within sixty days after such notification, and (ii) the identity of the person or office from which such statement may be obtained. Such statement may be given orally if the written notification advises the applicant of his right to have the statement of reasons confirmed in writing on written request.

(3) A statement of reasons meets the requirements of this section only if it contains the specific reasons for the adverse action taken.

(4) Where a creditor has been requested by a third party to make a specific extension of credit directly or indirectly to an applicant, the notification and statement of reasons required by this subsection may be made directly by such creditor, or indirectly through the third party, provided in either case that the identity of the creditor is disclosed.

(5) The requirements of paragraph (2), (3), or (4) may be satisfied by verbal statements or notifications in the case of any creditor who did not act on more than one hundred and fifty applications during the calendar year preceding the calendar year in which the adverse action is taken, as determined under regulations of the Board.

(6) For purposes of this subsection, the term "adverse action" means a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested. Such term does not include a refusal to extend additional credit under an existing credit arrangement where the applicant is delinquent or otherwise in default, or where such additional credit would exceed a previously established credit limit.

172.    15 U.S.C. §1691a provides:

Definitions; rules of construction

(a) The definitions and rules of construction set forth in this section are applicable for

22

the purposes of this title [15 USCS §§1691 et seq.].

(b) The term "applicant" means any person who applies to a creditor directly for an extension, renewal, or continuation of credit, or applies to a creditor indirectly by use of an existing credit plan for an amount exceeding a previously established credit limit.

(c) The term "Board" refers to the Board of Governors of the Federal Reserve System.

(d) The term "credit" means the right granted by a creditor to a debtor to defer payment of debt or to incur debts and defer its payment or to purchase property or services and defer payment therefor.

(e) The term "creditor" means any person who regularly extends, renews, or continues credit; any person who regularly arranges for the extension, renewal, or continuation of credit; or any assignee of an original creditor who participates in the decision to extend, renew, or continue credit.

(f) The term "person" means a natural person, a corporation, government or governmental subdivision or agency, trust, estate, partnership, cooperative, or association.

(g) Any reference to any requirement imposed under this title [15 USCS §§1691 et seq.] or any provision thereof includes reference to the regulations of the Board under this title [15 USCS §§1691 et seq.] or the provision thereof in question.

173.    Plaintiff was an applicant as defined in §1691a.

174.    Defendant is a creditor as defined in §1691a.

175.    Implementing Federal Reserve Board Regulation B, 12 C.F.R. §202.9, provides:

Notifications.

(a) Notification of action taken, ECOA notice, and statement of specific reasons --

(1) When notification is required. A creditor shall notify an applicant of action taken within:

(i) 30 days after receiving a completed application concerning the creditor's approval of, counteroffer to, or adverse action on the application;

(ii) 30 days after taking adverse action on an incomplete application, unless notice is provided in accordance with paragraph (c) of this section;

(iii) 30 days after taking adverse action on an existing account; or

(iv) 90 days after notifying the applicant of a counteroffer if the applicant does not expressly accept or use the credit offered.

(2) Content of notification when adverse action is taken. A notification given to an applicant when adverse action is taken shall be in writing and shall contain: a statement of the action taken; the name and address of the creditor; a statement of the provisions of section 701(a) of the Act; the name and address of the Federal agency that administers compliance with respect to the creditor; and either:

(i) A statement of specific reasons for the action taken; or

(ii) A disclosure of the applicant's right to a statement of specific reasons within 30 days, if the statement is requested within 60 days of the creditor's notification. The disclosure shall include the name, address, and telephone number of the person or office from which the statement of reasons can be obtained. If the creditor chooses to provide the reasons orally, the creditor shall also disclose the applicant's right to have them confirmed in writing within 30 days of receiving a written request for confirmation from the applicant.

176.  15 U.S.C. §1691e provides:

Civil liability

(a) Individual or class action for actual damages.  Any creditor who fails to comply with any requirement imposed under this title [15 USCS §§1691 et seq.] shall be liable to the aggrieved applicant for any actual damages sustained by such applicant acting either in an individual capacity or as a member of a class.

(b) Recovery of punitive damages in individual and class action for actual damages; exemptions; maximum amount of punitive damages in individual actions; limitation on total recovery in class actions; factors determining amount of award.  Any creditor, other than a government or governmental subdivision or agency, who fails to comply with any requirement imposed under this title [15 USCS §§1691 et seq.] shall be liable to the aggrieved applicant for punitive damages in an amount not greater than $ 10,000, in addition to any actual damages provided in subsection (a), except that in the case of a class action the total recovery under this subsection shall not exceed the lesser of $ 500,000 or 1 per centum of the net worth of the creditor.

In determining the amount of such damages in any action, the court shall consider, among other relevant factors, the amount of any actual damages awarded, the frequency and persistence of failures of compliance by the creditor, the resources of the creditor, the number of persons adversely affected, and the extent to which the creditor's failure of compliance was intentional.

(c) Action for equitable and declaratory relief.  Upon application by an aggrieved applicant, the appropriate United States district court or any other court of competent jurisdiction may grant such equitable and declaratory relief as is necessary to enforce the requirements imposed under this title [15 USCS §§1691 et seq.].

(d) Recovery of costs and attorney fees.  In the case of any successful action under subsection (a), (b), or (c), the costs of the action, together with a reasonable attorney's fee as determined by the court, shall be added to any damages awarded by the court under such subsection.

(e) Good faith compliance with rule, regulation, or interpretation of Board or interpretation or approval by an official or employee of Federal Reserve System duly authorized by Board.  No provision of this title [15 USCS §§1691 et seq.] imposing liability shall apply to any act done or omitted in good faith in conformity with any official rule, regulation, or interpretation thereof by the Board or in conformity with any interpretation or approval by an official or employee of the Federal Reserve System duly authorized by the Board to issue such interpretations or approvals under such procedures as the Board may prescribe therefor, notwithstanding that after such act or omission has occurred, such rule, regulation, interpretation, or approval is amended, rescinded, or determined by judicial or other authority to be invalid for any reason.

(f) Jurisdiction of courts; time for maintenance of action; exceptions.  Any action under this section may be brought in the appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction. No such action shall be brought later than two years from the date of the occurrence of the violation . . . .

177.    Defendant's policy and practice of not providing timely written notice of credit denial or failure to approve credit violates the ECOA.

178.    Plaintiff has suffered damages as a result of these violations.

ACCORDINGLY, Plaintiff requests that the Court enter judgment in favor of Plaintiff and against Defendant for statutory damages as provided by 15 U.S.C. §1691e, attorney's fees, litigation expenses, costs of suit and such other or further relief as is appropriate.

### Demand for Jury Trial

179.    Plaintiff demands trial by jury in this action.

Respectfully Submitted,

ADAM G. TAUB & ASSOCIATES
CONSUMER LAW GROUP, PLC

By:    s/ Adam G. Taub
Adam G. Taub (P48703)
Attorney for Audrey Scott
17200 West 10 Mile Rd. Suite 200
Southfield, MI 48075
Phone: (248) 746-3790
November 5, 2015                     Email:  adamgtaub@clgplc.net

### Certificate of Service

My name is Adam G. Taub and I am an officer of this Court.  On November 5, 2015, I served all parties entitled to notice with the foregoing document by ECF Filing to each record address.

Respectfully Submitted,

ADAM G. TAUB & ASSOCIATES
CONSUMER LAW GROUP, PLC

By:    s/ Adam G. Taub
Adam G. Taub (P48703)
Attorney for Plaintiff
17200 West 10 Mile Rd. Suite 200
Southfield, MI 48075
Phone: (248) 746-3790
Email:  adamgtaub@clgplc.net

Dated: November 5, 2015

26